

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 19, 1947

FAGAN DICKSON
FIRST ASSISTANT

Hon. Geo. W. Cox, M. D.
State Health Officer
Austin, Texas

Opinion No. V-351

Re: Authority of the gov-
erning body of a city
to control issuance
of health certificates,
and related questions.

Dear Sir:

We refer to your letter of July 21, 1947, con-
cerning the following questions:

"1. Does the law require that food han-
dlers or persons working in soda fountains, cafes,
bars, and etc., have a Wassermann or Kahn test
before, or at the time a licensed physician and
surgeon gives them a health certificate?

"2. What is the exact law concerning who
can issue health certificates to food handlers?

"3. Can a city designate a physician and
surgeon as the sole person who may issue a
health certificate within their corporate lim-
its? If the city does designate one physician,
as the only person whose health certificate
they will recognize, does that exclude other
licensed physicians in good standing from is-
suing health certificates to food handlers if
they certify they have examined the applicant
and find them free from communicable disease?"

Article 705e of Vernon's Penal Code reads, in
part, as follows:

"Section 1. No person, firm, corporation,
common carrier or association operating, manag-
ing, or conducting any hotel or any other public
sleeping or eating place, or any place or vehicle
where food or drink or containers therefor, of
any kind, is manufactured, transferred, prepared,
stored, packed, served, sold, or otherwise han-
dled in this State, or any manufacturer or vendor

of candies or manufactured sweets, shall work, employ, or keep in their employ, in, on, or about any said place or vehicle, or have delivered any article therefrom, any person infected with any transmissible condition of any infectious or contagious disease, or work, or employ any person to work in, on, or about any said place, or to deliver any article therefrom, who, at the time of his or her employment, failed to deliver to the employer or his agent, a certificate signed by a legally-licensed physician, residing in the county where said person is to be employed, or is employed, attesting the fact that the bearer had been actually and thoroughly examined by such physician within a week prior to the time of such employment, and that such examination disclosed the fact that such person to be employed was free from any transmissible condition of any infectious or contagious disease; or fail to institute and have made, at intervals of time not exceeding six months, actual and thorough examinations ,essential to the findings of freedom from communicable and infectious diseases, of all such employees, by a legally-licensed physician residing in the county where said person is employed, and secure in evidence thereof a certificate signed by such physician stating that such examinations had been made of such person, disclosing the fact that he or she was free from any transmissible condition of any communicable and infectious diseases."(Emphasis added)

" . . .

"Section 3. . . . Public health departments, and local lawmaking bodies, are hereby authorized to establish such further rules, regulations and ordinances as they may deem essential to the execution of the intentions of this Act; providing, however, that all conditions of this Act shall be requisite to all such regulations and ordinances, except, that the said authorities may adopt a plan for the registration of the physicians' certificates required by this Act and in lieu thereof issue a registration card to show that the person named thereon has complied with all of the provisions of this Act; providing further that the said registration card must bear the signature of the person named thereon and shall be displayed for public inspec-

tion at the place where such a person is employed."
(Emphasis added)

"  .  .  .  .

"Section 5. Whoever violates any provision of
this Act shall be fined in an amount not exceeding
Two Hundred Dollars ($200). Each act or omission
in violation of any of the provisions of this Arti-
cle, shall constitute a separate offense and shall
be punishable as hereinabove prescribed."

In 1937, the Legislature entered the whole field
of examining and licensing persons employed in hotels and
other public eating and sleeping places or vehicles where
food or containers therefor, of any kind, are manufactured,
transferred, prepared, stored, packed, served, sold, or
otherwise handled in this state, by enactment of said Ar-
ticle 705c, V. P. C., as a protection against the spread
of communicable, infectious, and contagious diseases in
and throughout the state. Such licenses are required to
be issued by a legally licensed physician residing in
the county where the person is employed. Such physician
is required to certify that the person "has been actual-
ly and thoroughly examined by such physician within a
week prior to the time of such employment, and that such
examination disclosed the fact that such person to be em-
ployed was free from any transmissible condition of any
infectious or contagious disease...."

In _Prescott vs. City of Borger_, 158 SW (2d) 578
(Error refused), the Court said:

"From the above it will be seen that the
Legislature has entered the field of legisla-
tion covered by the ordinance enacted by the
governing authorities of the City of Borger.
It is well established law in this state that,
generally, the governing authorities of cities
are prohibited by the Constitution, Art. 11,
Sec. 5, and the statutes, Art. 1165, et seq.,
R.C.S. 1925, Vernon's Ann. Civ. St. Art. 1165
et seq., from entering a field of legislation
that has been occupied by general legislative
enactments. Xydias Amusement Co. v. City of
Houston et al, Tex. Civ. App., 185 S.W. 415;
City of Lubbock v. South Plains Hardware Co.,
Tex. Civ. App., 111 S. W. 2d 343."

"  .  .  . When the governing body of appellee,

the City of Borger, attempted to enact the ordinance here in question, it undoubtedly entered a field of legislation that had been occupied by the Legislature when it enacted Art. 165-3. <u>The limitation placed upon local bodies does not extend, of course, to those ordinances which are permitted by, or are in harmony with constitutional and statutory provisions even though, in doing so, they may be said to be entering the same field.</u> The fourth paragraph of Sec. 2 of Article 165-3 implies that the governing bodies of cities may adopt specifications and regulations for any grade of milk that is offered for sale in such cities but provides that when the same are adopted they shall be governed by the specifications and regulations promulgated by the State Health Officer as authorized by the Act."

Said Article 705c empowers local lawmaking bodies to establish rules, regulations and ordinances, provided, that all conditions of that article shall be requisite to such regulations and ordinances, and that registration cards issued to employees shall show that the person named thereon has complied with all of the provisions of that article. Such local lawmaking bodies are not given any authority to modify said Article 705c or legislate inconsistently with it.

Your inquiry relates to an ordinance of Crystal City which is incorporated and operates under Title 28 of Vernon's Civil Statutes, which ordinance reads:

"Section 1. That all persons employed as waiters, waitresses or cooks, and all other persons in any manner handling foods, dishes or other receptacles for food, in hotels, cafes, restaurants, soda foundtains, bakeries or meat markets, in the City of Crystal City, Texas, shall before entering upon their duties as such and each six months thereafter obtain from the City Health Officer a certificate showing that the party named therein is in good health on day of examination by said health officer.

"Section 2. The Health Officer making such examination may charge a fee of not to exceed $1.00 for making such examination and his certificate relative to the same.

"Section 3. All persons using tools, other apparatus or receptacles for food in bakeries,

meat markets or other places where food or drinks are handled or sold shall keep the same in a clean, sanitary condition at all times and the same shall be subject to examination by the City Health Officer; and it is hereby made the duties of the owner or proprietor of any such business to see that all employees have such certificate issued. (Emphasis added)

"Section 4. All ordinances and parts of ordinances in conflict with this ordinance are hereby in all things repealed.

"Section 5. That any person or persons found guilty of violating any provision of this ordinance shall be fined in any sum not more than $100.00."

The authority of Crystal City to pass an ordinance pertaining to health certificates issued to employees mentioned in the ordinance is controlled by the language in Section 3 of Article 705c.

The only language in the ordinance, which applies to pertinent examinations and certificates, is that the class of employees named in the ordinance shall "obtain from the City Health Officer a certificate showing that the party named therein is in good health on the day of examination by said health officer."

Article 705c authorizes any legally licensed physician in the county where the person is employed, to examine such person and issue a certificate disclosing that he or she has been examined by such physician and found free from any transmissible condition of any communicable and infectious disease.

Article 705c, V.P.C., and the City Ordinance of Crystal City pertain to the protection of the public health by requiring employees in public eating places to obtain health certificates. The penalty fixed in said article is not more than $200 and that fixed in the ordinance is not more than $100. Crystal City is not authorized to prescribe a penalty for violation of its ordinance inconsistent with the State law.

In City of Wink vs. Griffith Amusement Company, 100 S. W. (2d) 695, the Supreme Court said:

"Article 654 of the Penal Code provides as a penalty for establishing a lottery, a fine of 'not less than one hundred nor more than one thousand dollars.' The penalty prescribed by the ordinance in question, as shown above, is a fine 'not exceeding ($100.00) One Hundred Dollars, and each day of violation shall be a separate offense.' It will at once be observed that the penal provisions of the ordinance are different from those contained in the State Penal Code, although both acts cover the offense of conducting a lottery. The rule is definitely established with us that the penal provisions of an ordinance cannot be different from those of the Penal Code for the same offense, and that ordinances in conflict with the general or state law are void. 30 Tex. Jurisprudence p. 301, # 167, p. 304, # 168, and cases cited in the notes; El Paso Electric Co. v. Collins (Tex. Com. App.) 23 SW (2d) 295-296."

The case of El Paso Electric Company vs. Collins, 23 S. W. (2d) 295, was a traffic regulation case in which the statute law defined a part of the offense identical with the ordinance involved. Other details were specified in the ordinance which were not in the statute; the penalty prescribed in the Statute is "not to exceed $100.00;" in the ordinance, "not less than $1.00 nor more than $100.00." The Supreme Court decided that as to the conflict, the ordinance was ineffective.

We are of the opinion that the ordinance of Crystal City, above set out, is void because it is inconsistent with the general laws of Texas.

Any legally licensed physician residing in Zavala County is authorized to issue health certificates to food handlers in Crystal City; the governing body of said city is not authorized to confine such authority to one physician.

This department is not familiar with details of an examination of a person essential to findings that such person is free from communicable and infectious diseases; if Wassermann or Kahn tests are essential to the discovery of conditions of the person in that regard, we are of the opinion that such are necessary, otherwise not.

Hon. Geo. W. Cox, M. D., Page 7, V-351

## SUMMARY

The ordinance of Crystal City which
regulates the examination and licensing of
employees in hotels, cafes, restaurants,
soda fountains, bakeries, and meat markets
in Crystal City, is inconsistent with
Article 705c, V.P.C., because the ordinance
confines in its City Health Officer the au-
thority to examine and issue licenses to
such employees, which examinations and li-
censes are different from those required
by said general law; the maximum penalty
fixed by the ordinance for its violation
is $100, and the maximum penalty fixed in
general law for the same offense is $200.
For these reasons said ordinance is void.
Art. 7054, V.P.C.; Prescott vs. City of
Borger, 158 S. W. (2d) 578; City of Wink
vs. Griffith Amusement Company, 100 S. W.
(2d) 695; El Paso Electric Company vs. Col-
lins, 23 S. W. (2d) 295. If Wassermann and
Kahn tests are essential to the discovery
of infectious and communicable diseases, such
tests are necessary in such examinations.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By W. T. Williams
Assistant

APPROVED

FIRST ASSISTANT
ATTORNEY GENERAL

WTW:et:jt:jrb