## MORELAND v. CITY OF SAN ANTONIO et al.

No. 10434.

Court of Civil Appeals of Texas. San Antonio.

May 11, 1938.

Rehearing Denied May 14, 1938.

Fagan Dickson, of San Antonio, for appellant.

Denman, Franklin & Denman, T. D. Cobbs, Jr., and Jack Davis, all of San Antonio, for appellees.

SMITH, Chief Justice.

At a special election held for that purpose in the city of San Antonio on November 23, 1937, the following proposition was submitted and adopted by a majority of those voting in said election:

"Shall the Charter of the City of San Antonio be amended by adding Section 99-A being a provision authorizing an advertising tax, which addition and amendment to the Charter shall be read as follows:

" 'Section 99–A. The Board of Commissioners of the City of San Antonio shall levy and collect annually a special tax not exceeding 5 cents on every $100.00 valuation of the taxable property within the City of San Antonio, to advertise the City of San Antonio to increase the growth of the City, for the improvement thereof and for the benefit of the inhabitants; and the taxes shall be expended in a manner which will promote the general prosperity and welfare of the City of San Antonio.' "

In pursuance of that authority the board of city commissioners of said city passed an enabling ordinance, on March 3, 1938, containing the following, among many other, provisions: "Section 73. That to provide for the advertising of the City of San Antonio, to increase the growth of the City, for the improvement thereof and for the benefit of the inhabitants, there is hereby levied for the fiscal year beginning June 1st, 1937, and ending May 31, 1938, a special tax of Three (3) Cents on every One Hundred Dollars valuation on all property mentioned in Section 1 hereof."

This suit was thereafter brought by Mrs. Beulah Mae Moreland against Honorable C. K. Quin, as mayor, and Honorable Frank H. Bushick, as tax commissioner, of the city of San Antonio, to perpetually enjoin them from levying, collecting, and spending the three-cent advertising tax provided in said ordinance in pursuance of said charter amendment. All special exceptions to the plaintiff's petition, and the general demurrer thereto as well, were sustained below, and plaintiff declining to amend, the cause was dismissed. Plaintiff has appealed. The parties will be designated as plaintiff and defendants, respectively, as in the trial court.

The ordinances giving notice of and calling the election upon said charter amendment, and the proclamation of said election, each contained the following recitations as to the requisite qualifications of those entitled to vote in said election: "4. Said election for the adoption of the amendment proposed above, shall be held in accordance with the laws of the State of Texas, and all qualified voters of the City of San Antonio holding a poll tax for the current fiscal year, or a certificate of exemption, shall be allowed to vote in said election. The proposition shall be printed in full upon the ballots used in said election and the ballots shall be prepared in such a manner that the voter may vote 'Yes' or 'No' on said amendment. The manner of holding said election shall be governed by the laws of the State of Texas, regulating general elections."

The gist of plaintiff's objection to the imposition of the advertising tax is that all qualified voters in the city were invited to vote at the election at which the charter

amendment authorizing said tax was adopted, including those who owned no property and had not rendered same for taxation, in asserted contravention of sections 3 and 3a of article 6 of our State Constitution, as follows:

"Sec. 3. * * * in all elections to determine expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town * * *."

"Sec. 3a. When an election is held by any * * * city, * * * for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, only qualified electors who own taxable property in the * * * city, * * * where such election is held, and who have duly rendered the same for taxation, shall be qualified to vote * * *."

Plaintiff thus states the specific grounds upon which she contends the tax is invalid:

"First, the election was a special one and the mandatory provisions of law regulating the holding of such an election were not complied with because all ordinances passed in an attempt to comply with such statutes were void on their face because they undertook to prescribe the qualifications of voters at said election in a manner inconsistent with the applicable provisions of the statutes and the constitution of Texas. It is true that this is a collateral attack but the vice appears from the face of the proceedings.

"Second, the proposition to be voted on was submitted to the wrong electorate and there was no lawful authority for holding the kind of election which was in fact held. A thing which is absolutely void is simply a nullity and is subject to collateral attack any and everywhere."

It is true, as contended by plaintiff, that without express authority, such as that granted in the charter amendment in question, the city of San Antonio had no power to levy and collect taxes, and spend the public funds, for the purpose of advertising the city. Anderson v. City of San Antonio, 123 Tex. 163, 67 S.W.2d 1036. It follows, then, that if the amendment has not been legally adopted, the property of the citizens may not be taxed for that purpose, and plaintiff would be entitled to the injunction prayed for; otherwise, she is not entitled to that relief, and the judgment must be affirmed.

We have concluded that the trial judge properly denied the injunction, for two reasons:

First. The proposition voted upon, when properly analyzed, was no more than an amendment to the city charter granting to the city the power to advertise the city for the benefit of its citizens and was not "to determine expenditure of money" or "for the purpose of * * * expending money," within the meaning of sections 3 and 3a of article 6 of the Constitution, restricting the privilege of voting thereon to property taxpayers.

Second. Even if it should be held that the election was one within the purview of sections 3 and 3a, plaintiff's remedy lay in a contest of that election, rather than in a collateral attack thereon such as this, since plaintiff's attack thereon rests upon the ultimate contention that persons not qualified therefor were permitted to vote therein.

And first, as to the character of the amendment: Obviously, the primary and controlling purpose and effect of the proposition, as an amendment to the charter was to grant to the city the power, not theretofore possessed, to advertise the city. Upon that proposition, as a charter amendment, all the qualified voters of the city were entitled to vote, whether property owners or taxpayers, or not. Such a grant carried with it, by necessary implication, the incidental authority to levy such taxes and expend such public funds as were reasonably necessary to the exercise of the general power expressly granted by the amendment. The authority to levy a tax and expend public funds was purely incidental to the power to advertise, and would have been fully implied whether provided for in the amendment or not. It was an authority exercisable by the board of commissioners by ordinance, and without having been voted upon by the electorate, so long as it was for a purpose authorized by charter or the general laws. The result is that the provision in the amendment for the levy, collection, and spending of taxes was surplusage and, except for the limitation thereon, amounted to no more than confirmation of an authority necessarily incident to and implied from the general grant of power to advertise. Its only effect was to *restrict* the implied and incidental power to the levy of a tax not to exceed five cents on the one hundred dollar valuation.

The amendment was in two separable parts, one to grant a power conferrable only by general law or charter amendment, the other to fix a maximum limit upon the amount of public funds apportionable to the exercise of the grant. But for such limitation, the authority of the city, through its board of commissioners, to levy taxes for carrying out the general grant, would have been limited only by the constitutional maximum of $1.25 on the one hundred dollar valuation for special purposes. The amendment was not self-executing, albeit it is couched in mandatory language. It amounts to no more than an authorization of levy and spending in any amount not exceeding five cents on the one hundred dollar valuation for the purpose of executing the power conferred by the amendment, to "advertise the City," etc. The amendment was ineffectual until vitalized by ordinances making the levy and setting up the machinery and making the appropriations for the exercise of the power granted by the amendment. That power being properly granted in the amendment, upon which all qualified voters were privileged to vote, whether taxpayers or not, the incidental authority to levy taxes to execute the power was implied, and need not have been submitted to a vote of the people, whether taxpayers or not.

With reference to the second ground of affirmance, we are of the opinion that plaintiff's remedy, if any, lay in a contest of the election at which said charter amendment was adopted. Her suit is, in effect, an action to nullify a tax levy for advertising purposes on the ground that, under the official call for the election at which such levy was authorized, the privilege of voting thereon was not expressly restricted to qualified voters who own property in the city and had rendered same for taxation, but was extended through recitals in the call to "all qualified voters * * * holding a poll tax for the current fiscal year or a certificate of exemption." In short, plaintiff questions the validity of an ordinance fixing a tax levy upon the ground that the same is based upon a charter amendment adopted at an election participated in by persons unknown but not qualified to vote therein. We think that if it were true, as plaintiff contends, that the election was absolutely void and a nullity, then its validity might be questioned in a collateral proceeding such as plaintiff concedes this to be. But we think it equally clear that if the election was not void and

a consequent nullity, then its validity may not be questioned, on the stated ground, in this collateral proceeding, but only in a contest prosecuted under the procedure prescribed in our election statutes. Title 50, chapter 9, article 3041 et seq., Revised Statutes 1925.

This action is for a writ of injunction to restrain the enforcement of a charter provision and city ordinances admittedly regular upon their face. We do not feel called upon or authorized, in order to grant such a harsh remedy, to presume from the general allegations in plaintiff's petition that a part of the electorate voted illegally, and were permitted by the election officials to cast illegal ballots, and that those officials counted illegal ballots, in sufficient numbers to affect the declared result of, and thereby nullify, the election. The presumption, rather, should run the other way, and be given effect to deny the writ.

The judgment is affirmed.